UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

<u>Steven Tendo</u>

               v.                                Case No. 1:26-cv-84-JL-TSM

<u>Pam Bondi, et al.</u>

<u>**ORDER GRANTING HABEAS RELIEF**</u>

      This habeas corpus proceeding concerns the lawfulness of Immigration and Customs Enforcement's ("ICE") re-detention of a noncitizen under a final order of removal to whom the agency had previously granted supervised release. The petitioner, citing *Vo v. Todd Lyons, et al.*, No. 1:25-CV-533-JLTSM, 2026 WL 323133 (D.N.H. Jan. 27, 2026), argues that ICE contravened its own regulations when revoking his release by failing to provide a meaningful, individualized basis for his re-detention sufficient to give him notice and an opportunity to respond. The court ordered the government to show cause why it should not grant the same relief granted in *Vo*. The government's response attempts to distinguish the case from *Vo* and argue that its notice to Tendo was sufficient.

      This court has jurisdiction under 28 U.S.C. §§ 1331 and 2241. After reviewing the parties' submissions and hearing oral argument, the court agrees with Tendo. As in *Vo*, because ICE elected to release Tendo subject to an order of supervision governed by regulation, it was bound to comply with that regulatory framework in revoking his release. As in *Vo*, it did not do so. For the reasons that follow, the petition is granted and Tendo will be released pursuant to the conditions of his prior order of supervision.

1

I.    Background[1]

Tendo is a native and citizen of Uganda.  He alleges that he left Uganda after suffering significant torture at the hands of Ugandan security services.[2]  He presented himself at the U.S. port of entry in Brownsville, Texas, on or about December 20, 2018, sought asylum, and was detained.[3]  He received a positive "credible fear" determination and was placed in removal proceedings.[4]  Petitioner filed an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").[5]  DHS denied his applications, along with his subsequent appeal, in December 2019.[6]  Tendo moved to reopen his immigration case and stay his removal that same month, but the BIA denied his motions.  He also filed multiple motions to stay and a petition for review with the Court of Appeals for the Fifth Circuit, which denied his motions to stay and, in 2022, denied in part and dismissed in part his petition for review.[7]  In November 2025 Tendo again moved to reopen his immigration proceedings and for a stay of removal.  Those motions remain pending.[8]

---

[1] This background is drawn from Tendo's Am. Pet. for Writ of Habeas Corpus (doc. no. 7), the Federal Resp'ts' Resp. to Show Cause Order ("Resp.") (doc. no. 10), and Tendo's Reply to Fed. Resp'ts' Resp. ("Reply") (doc. no. 11).
[2] Am. Pet. (doc. no. 7) ¶ 16.
[3] *Id*. at ¶ 17.
[4] *Id*.
[5] *Id*.
[6] *Id*.
[7] Resp. (doc. no. 10) at 2-3.
[8] During the court of his immigration proceedings, Tendo also filed numerous actions in federal court, including a Federal Tort Claims Act action against the United States related to the conditions of his ICE detention from 2018 through 2021.  Am. Pet. (doc. no. 7) at ¶ 26.  The claim was eventually settled on June 9, 2025.  *Id*.

In 2021 ICE released Tendo under an Order of Supervision while the Fifth Circuit Court of Appeals reviewed his case.[9] For the next five years, Tendo remained in the community and complied with the terms of his order of supervision, including appearing for regular check-ins with ICE.[10] After the Fifth Circuit Court of Appeals dismissed his petition in 2022, Tendo applied for a one-year stay of removal.[11] ICE granted that stay and additional one-year stays on December 13, 2023 and February 3, 2025.[12] Tendo's most recent stay of removal expired on or about February 3, 2026.[13] On February 2, 2026, Tendo's counsel emailed the ICE Boston Field office to inform ICE that Tendo intended to apply for another stay of removal in connection with his scheduled February 6, 2026 check-in.[14] Instead of waiting for the check-in, ICE detained Tendo on February 4 at the assisted living facility where he works as a nurse.[15] As Tendo left the parking lot of the facility, several ICE vehicles surrounded him. ICE agents arrested him and did not, at the time, provide him with a warrant for his arrest or a notice of revocation of release.[16]

---

[9] *Id*. at 3; *see also* Order of Supervision (doc. no. 13-1).
[10] Am. Pet. (doc. no. 7) ¶ 27.
[11] Resp. (doc. no. 10) at 3.
[12] *Id.*
[13] *Id.*
[14] Email Chain (doc. no. 7-4) at 2.
[15] Am. Pet. (doc. no. 7) ¶ 42.
[16] The court agrees with Tendo that the manner of his arrest "bore all the hallmarks of a planned law enforcement operation," *see* Reply (doc. no. 11) at 9, which raises the question of why ICE was unable to provide him with immediate documentation providing notice of the authority under which he was detained, including an arrest warrant or an order of revocation of release. The court's point here is not that these documents were legally required to effectuate the arrest, but rather that the court's ensuing due process analysis implicates questions of notice.

After several hours in detention, Tendo received a "Notice of Revocation of Release."[17] The next day he received a second, nearly identical notice.[18] As in *Vo*, Tendo's notice of revocation identifies three reasons for ICE's decision to revoke his order of supervision. First, it states that the "decision [to revoke Tendo's release was] made based on a review of [his] official alien file and a determination that there are changed circumstances in [his] case."[19] Second, it advises that "[Tendo] can be removed from the United States" pursuant to his order of removal.[20] Third, it provides that "ICE has determined that the purposes of [his] release have been served and that it is appropriate to enforce [his] removal order."[21] The notice further informs Tendo: "[P]ursuant to 8 [C.F.R §] 241.4, you are to remain in ICE custody at this time. You will promptly be afforded an informal interview at which you will be given an opportunity to respond to the reasons for the revocation."[22] A digital signature dated February 4, 2026 by Frank T. Padula, the Acting Field Office Director for ICE's Burlington (MA) appears on the notice.[23]

---

[17] Notice of Revocation of Release dated Feb. 4 (doc. no. 7-5).
[18] Notice of Revocation of Release dated Feb. 5 (doc. no. 7-6); *see also* doc. no. 10-2.
[19] Notice of Revocation of Release dated Feb. 5 (doc. no. 10-2). The notice does not detail the specific circumstances or changes to which it refers.
[20] *Id*.
[21] *Id*.
[22] *Id.*
[23] Despite issuing two notices of revocation of release, the government relies only on one, with service dated February 5, 2026. *See* Notice of Revocation of Release dated Feb. 5 (doc. no. 10-2). The February 4 notice, *not* relied on by the government, states, in addition to the above, that "Uganda has issued a travel document for [Tendo's] removal." *See* Notice of Revocation of Release dated Feb. 4 (doc. no. 7-5). At a February 10 status conference with the court, counsel for the government represented, and reiterated in its filing, that the statement in the February 4 notice was incorrect: Uganda has not "issued a travel document" for Tendo's removal, but rather Tendo can be removed to Uganda without travel documents through the Electronic Nationality

4

Tendo filed the present petition for a writ of habeas corpus on February 4, 2026, challenging the lawfulness of his renewed detention. He contends that his case is "nearly identical" to *Vo* because "DHS's notice of revocation in no way clearly articulates 'the legal or factual basis for its action' in revoking the petitioner's order of supervision."[24] He requests the same relief issued in *Vo*: release pursuant to the conditions in his preexisting order of supervision.[25] After holding a status conference with the parties, the court ordered the government to show cause why the court should not provide such relief.

## II.   Discussion

### A.   Lawfulness of detention

*Vo* involved a Vietnamese citizen who was ordered removed in 2009. 2026 WL 323133, at *1. After detaining him during his removal proceedings, ICE released Vo from detention subject to supervision. *Id*. at *2. In 2025, at a routine check-in, ICE re-detained Vo despite his having complied with his supervision and there being no changes in his removal proceedings. *Id*. Vo challenged his re-detention. This court found that revoking Vo's release under either of 8 U.S.C. § 1231's implementing regulations—8 C.F.R. §§ 241.4 or 241.13—required ICE to "articulate a meaningful, individualized basis for revocation sufficient to give [Vo] notice of the grounds for re-detention and an

---

Verification program. *See* Sullivan Decl. (doc. no. 10-1) at ¶¶ 26-27. Tendo's counsel indicated at the status conference that they were not previously aware that the statement in the notice was incorrect. Because of this discrepancy, and because the government relies only on the previously issued February 5, 2026 notice of revocation in its filings, the court will consider only the February 5, 2026 notice of revocation.

[24] Reply (doc. no. 11) at 3 (quoting *Vo*, 2026 WL 323133 at *4).
[25] *Id*.

opportunity to respond." *Id*. at *4 (citing 8 C.F.R. § 241.4(l)(2), (l)(3); 8 C.F.R. § 241.13(i); *Rombot v. Souza*, 296 F. Supp. 3d 383, 387 (D. Mass. 2017) ("Upon revocation, [§§] 241.4 and 241.13 both require ICE to provide 'an initial informal interview promptly ... to afford the [noncitizen] an opportunity to respond to the reasons for revocation.' " (citations omitted))).[26] Because ICE "offer[ed] no meaningful explanation as to the basis" for revoking Vo's release, his re-detention was unlawful.

This case resembles *Vo*. As in *Vo*, ICE released Tendo after issuing a final order of removal. As in *Vo*, Tendo's order of supervision does not specify which regulation governs his release; it premises his release on the fact that "the agency [had] not effected [his] deportation or removal during the period prescribed by law."[27] Like Vo, Tendo complied with the requirements of his supervision while living at liberty in the United

---

[26] At oral argument, the government argued for the first time that 8 C.F.R. § 241(*l*)(1), which requires that a noncitizen "be notified of the reasons for revocation of his or her release or parole" and "afforded an initial informal interview promptly after his or her return to [ICE] custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification," applies only to a revocation based on a supervised release violation, and not to a revocation based on any of the alternative grounds for re-detention enumerated in 8 C.F.R. § 241(*l*)(2). Unlike § 241(*l*)(1), § 241(*l*)(2) does not list any procedures but rather provides authority "in the exercise of discretion, to revoke release and return to Service custody an alien previously approved for release under the procedures in this section." The government did not provide the court with judicial authority supporting its reading of § 241, which fails under basic principles of statutory construction and would effectively eliminate all due process protections before re-detaining a noncitizen who has fully complied with the conditions of his or her release under § 241. *See Jimenez v. Cronen*, 317 F. Supp. 3d 626, 641 (D. Mass. 2018) (detailing INS's stated rationale in publishing 8 C.F.R. § 241.4; namely, that § 241.4 "has the procedural mechanisms that ... courts have sustained against due process challenges" (quoting Detention of Aliens Ordered Removed, 65 F.R. 80281-01, at 80283 (2000)); *see also* Bonitto v. ICE, 547 F. Supp. 2d 747, 757-58 (S.D. Tex. 2008) (explaining that §§ 241.4 and 241.13 "do not merely facilitate internal agency housekeeping, but rather afford important and imperative procedural safeguards to detainees").

[27] *See* Order of Supervision (doc. no. 13-1) at 1.

States and developing deep ties to his community.[28]  The notices of revocation in both cases employ exactly the same conclusory language rather than articulating any meaningful or individualized bases for revocation.[29]  *See* Vo, 2026 WL 323133, at *4-5.

The government raises three grounds on which to distinguish *Vo*.  First, it asserts that the notice of revocation issued here is more comprehensive than the notice in *Vo* because it recounts the procedural history of Tendo's case, history the government characterizes as more "[]eventful" than Vo's.[30]  No authority supports this argument.  A more detailed procedural history of this particular case, or this case's more eventful history, does not cure the notice's inadequate articulation of an individualized legal or factual basis for re-detention, particularly where, as here, the procedural history detailed in the notice ends in 2021 and omits any explanation of circumstances in 2026 that would justify re-detention.[31]

The government argues next that, because Tendo knew his stay of removal was set to expire, the notice's conclusory statement that the revocation was "appropriate to enforce the removal order" provided adequate notice in this case.[32]  According to the government, the same language was insufficient in *Vo* because he "had remained at liberty for almost 15 years without any change when he received his notice of

---

[28] *See, e.g.* Ex. W to Reply (doc. no. 11-1) at 794-825 (letters of support from Tendo's community in the United States).
[29] *Compare* Revocation of Release, (doc. no. 10-2) (Tendo's Notice of Revocation of Release) *with Vo v. Lyons, et al.*, No. 1:25-CV-533-JL-TSM, ECF No. 1-2 (D.N.H. Jan. 27, 2026) (Vo's Notice of Revocation of Release).
[30] Resp. (doc. no. 10) at 8-9.
[31] *See* Reply (doc. no. 11) at 4.
[32] Resp. (doc. no. 10) at 9.

7

revocation," and "the full context of a petitioner's immigration history should be considered when determining what constitutes sufficient notice of revocation."[33] The government provides no authority for this position, which, if anything, arguably reverses the better logic: while the stay of removal was in effect, Tendo enjoyed more protection from removal than Vo. Once the stay expired, he stood in the same position as Vo. There is no basis to conclude that Tendo was or should have been on more or better notice than Vo that his removal, the day after the stay expired, "would be imminent."[34] If anything, successfully renewing the stay for three consecutive years could reasonably give him less cause, not more, to think that his removal was imminent.[35]

Finally, the government argues that, by giving Tendo notice of the revocation and an informal interview on February 9, 2026, ICE "fully complied with the requirements of § 241.4."[36] Putting aside the fact that, just as in *Vo*, it is unclear whether § 241.4 or § 241.13 governs Tendo's release and subsequent re-detention,[37] an informal interview

---

[33] *Id.*

[34] *Id.*

[35] As counsel confirmed at oral argument, Tendo had twice applied for and received renewals of his stay of removal after the previous stay had expired, first in November 2023 and again in January 2025. *See* Sullivan Decl. (doc. no. 10-1) at ¶¶ 17-19.

[36] Resp. (doc. no. 10) at 9.

[37] At oral argument the government argued for the first time that the circumstances surrounding Tendo's initial release from detention demonstrate that he was released under § 241.4. It pointed to a letter from several members of Congress, requesting Tendo's release for medical reasons. *See* Congressional Letter (doc. no. 14-1) at 2. The accompanying document shows that Tendo was released on parole for "humanitarian" reasons until 2028. *See* Form I-94 (doc. no. 14-2). These documents were filed with the court (and provided to adverse counsel) this morning, mere hours before the 11:00 a.m. oral argument. (The court attributes no bad faith or untoward conduct to the government's counsel, dealing as she is with a swift and changing litigation schedule.) These reasons, according to the government, align more closely with release under § 241.4. On the other hand, Tendo's Order of Supervision grounds his release in the length of his detention, which lasted four times longer than the presumptively reasonable six-months

cannot cure improper notice. *See Guerra v. Bondi*, No. CIV-25-1240-G, 2026 WL 114258, at *6 (W.D. Okla. Jan. 15, 2026) ("The notification [] provides the noncitizen information as to why and on what legal basis his or her release is being revoked, and the interview and custody review constitutes an opportunity to challenge that decision."). As this court found in *Vo*, the requirement of notice "is no mere technicality, but rather a core component of the regulatory scheme that implements the constitutional limits courts have recognized in *Zadvydas* [*v. Davis*, 533 U.S. 678 (2001)] and protects against arbitrary re-detention." *Vo*, 2026 WL 323133, at *4.[38]

Because, as in *Vo*, ICE failed to comply with DHS regulations governing the revocation of release, Tendo's re-detention is unlawful.[39] *See Vo*, 2026 WL 323133, at *5.

---

established by *Zadvydas*. This aligns his release more closely with § 241.13. *See* Order of Supervision (doc. no. 13-1) at 1. In either case, however, this and other courts have held that both §§ 241.4 and 241.13 require meaningful, individualized written notice on re-detention, which ICE did not give. *See Vo*, 2026 WL 323133, at *4 (citing *Kong v. United States*, 62 F.4th 608, 619-20 (1st Cir. 2023) (emphasizing the need for an individualized, fact-based determination tied to changed circumstances) and *Rombot*, 296 F. Supp. 3d at 387 ("Upon revocation, [§§] 241.4 and 241.13 both require ICE to provide 'an initial informal interview promptly ... to afford the [noncitizen] an opportunity to respond to the reasons for revocation.' " (citations omitted))).

[38] *See also supra* n. 26; *Noem v. Abrego Garcia*, 604 U.S. ---, 145 S. Ct. 1017, 1019 (2025) (Sotomayor, J., statement regarding the Court's disposition of the application) (stating that "in order to revoke conditional release" under 8 C.F.R. § 241.4(l), "the [g]overnment must provide adequate notice and 'promptly' arrange an 'initial informal interview ... to afford the [noncitizen] an opportunity to respond to the reasons for the revocation stated in the notification' ").

[39] Because the court finds that Tendo's detention is unlawful under 8 C.F.R. § 241 and requires release, it does not reach the government's argument under *Zadvydas* that Tendo's re-detention complies with his constitutional due process rights because he has not carried his burden to show that there is "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *See* Resp. (doc. no. 10) at 10-11.

**B.     Relief**

The government argues that the appropriate remedy for defective notice is not to release the petitioner but to allow ICE to issue new notice and provide a new informal interview.  The government again provides no authority for this proposition, which is inconsistent with its position in *Vo*.[40]  The court declines to adopt the government's position.  As this court noted in *Vo*, applicable law supports the conclusion that the appropriate remedy is release under the previously ordered conditions.  *Vo*, 2026 WL 323133, at *5 (citing *Rombot*, 296 F. Supp. 3d at 388-89 (D. Mass. 2017) (ordering petitioner's release after finding that ICE failed to follow the procedures required by § 241.4 in detaining the petitioner) and *Jimenez*, 317 F. Supp. 3d at 657 (concluding, where ICE failed to comply with § 241.4 in revoking petitioners' release, that "[i]t would be particularly unfair to require that petitioners remain detained…while ICE attempts to remedy its failure to follow its regulations and to provide each of them due process," and thus "most appropriate that the court exercise its equitable authority to remedy the violations of petitioners' constitutional rights to due process by promptly deciding itself whether each should be released")); *see also* G.P. v. Garland, No. 1:23-cv-322-PB, 2024 WL 328435, at *5 (D.N.H. Jan. 29, 2024), aff'd, 103 F. 4th 898 (1st Cir. 2024) (Barbadoro, J.).

---

[40] *See Hung Thanh Vo v. Todd Lyons, et al.*, No. 1:25-CV-533-JL-TSM, ECF No. 13 at 2 n.2 (D.N.H. Jan. 27, 2026) (Government's Brief noting that "where Petitioner has a final removal order, was previously released on an Order of Supervision, and was detained to effectuate his removal rather than in response to a violation of conditions or other changes in his circumstances, the appropriate remedy is release under the previously ordered conditions.").

### III.   Conclusion

For the foregoing reasons, the court **GRANTS** the petition for a writ of habeas corpus.[41]  The petitioner shall be released pursuant to the conditions in his preexisting order of supervision.  The petition is denied in all other respects.


SO ORDERED.

Joseph N. Laplante
United States District Judge

Date: February 20, 2026
cc: Counsel of Record

---

[41] Doc. no. 7.